Alaska Realty Company, a corporation organized under the laws of Ohio v. Commissioner.
Alaska Realty Co. v. Commissioner
Docket No. 110808.
United States Tax Court
1943 Tax Ct. Memo LEXIS 281; 2 T.C.M. (CCH) 190; T.C.M. (RIA) 43252; May 28, 1943
*281 Where, by the terms of a 99-year lease, renewable forever, the lessee agrees that it will, at its own expense, keep the buildings and improvements on the premises in good order and repair and will, at its own expense, replace all or any part thereof whenever necessary, the lessor is not entitled to depreciation on such buildings and improvements. Milton H. Schmidt, Esq., for the petitioner. John H. Pigg, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioner's income taxes as follows: Year ended
Deficiency
September 30, 1938
$9,093.62
September 30, 1939
9,453.45
September 30, 1940
9,900.98
The question presented is the right of the lessor, under a 99-year lease, renewable forever, to take depreciation on the property leased. The parties agree on the facts. Findings of Fact Petitioner is an Ohio corporation organized on November 5, 1928, and reincorporated on January 2, 1929, with an authorized capital stock consisting of 1,000 shares of common stock of a par value of $100 each. Its returns for the taxable years were made to the Collector for the First District of Ohio. On January 4, 1929, *282 the petitioner issued all its stock to The Rollman & Sons Co., an Ohio corporation, engaged in the operation of a department store, for all the latter's interests in three properties, and equipment therein, located in the business section of Cincinnati, Ohio, and assumed the leases, mortgages and purchase agreements outstanding on part of the property. Petitioner's activities are limited by its charter to the acquisition, owning, leasing, and selling of these properties, which are known as the Rollman Department Store, the Havlin Hotel and the Rollman Garage and Warehouse. The Rollman Department Store property was situated on a lot 99 x 123.91 feet on the northeast corner of Fifth and Vine Streets, the center of the retail section of the city. It was improved by a building erected in about 1925 at a cost of $963,822.80 for the building, and $794,381.46 for building equipment, furniture and fixtures, a total of $1,758,204.26. There was outstanding against the property a 99-year lease, renewable forever, executed in 1920 by Anna S. Taft, the then owner of fee simple title, under the terms of which The Rollman & Sons Co., the lessee, agreed to pay an annual rental of $50,000, plus taxes *283 and assessments levied against the property. The improvements were erected pursuant to the terms of the lease. The Havlin Hotel was located on the southwest corner of Opera Place and Vine Street, and was separated from the Rollman Department Store property by Hatters Alley. It had a frontage of 60 feet on Vine Street and a depth of 259.4 feet. The fee simple title to the property was in five different owners. It was subject to annual ground rents aggregating $26,523. The improvements on the lot consisted of a hotel erected in 1906. The basement of the building was used by The Rollman & Sons Co. in connection with the operation of its department store and a portion of the ground floor was leased to small retail store establishments. The Rollman Garage and Warehouse was located on Dunlap and Henry Streets, about ten blocks from the Rollman Department Store, and was owned by The Rollman & Sons Co. in fee. The property, including equipment, was acquired in 1925 at a total cost of $50,525.59, and was used by The Rollman & Sons Co. as a garage and warehouse. Prior to January 4, 1929. The Rollman & Sons Co. was organized under the laws of the State of Ohio, as the successor to the corporation *284 of a like name from which the petitioner had received the property. The successor corporation will be hereinafter referred to as the Rollman Company, or the lessee. On January 4, 1929, petitioner and the Rollman Company entered into a lease contract whereby the petitioner demised to the latter company, its successors and assigns, subject to the terms of the lease, for a period of 99 years, renewable forever, all of the properties hereinabove described as the Rollman Department Store and the Havlin Hotel. By a separate indenture of lease, of the same date, January 4, 1929, petitioner also demised to the Rollman Company, its successors and assigns, subject to the terms of such lease, for a period of 99 years, renewable forever, all of the properties hereinabove described as the Rollman Garage and Warehouse. The first-mentioned lease agreement, in respect of the Rollman Department Store and the Havlin Hotel properties, provided for the payment by the lessee to petitioner of an annual rental of $390,000, and the latter agreement, covering the Rollman Garage and Warehouse, provided for an annual rental of $10,000. Material provisions of the two lease agreements, which are identical, are *285 as follows: That it [the lessee] will, in addition to the rents aforesaid reserved, pay all taxes, rates, charges and assessments that may now or at any time during this demise be levied, rated, charged, assessed or imposed on said property whatsoever including the taxes due and payable in December, 1928 and in June, 1929. It is agreed that the destruction of the buildings at any time located on said premises or their being rendered untenantable in any manner, in whole or in part, shall not entitle the Lessee to an abatement of the rent either in whole or in part of such account. That it will, at its own expense, keep the buildings, and improvements on said premises in good order and repair and will, at its own expense, replace all or any part thereof whenever necessary. The lessee agreed to keep the buildings insured against loss by fire to the extent of 90 per cent of their value and against loss by tornado to the extent of 50 per cent of their value and, in the event of any loss from such causes, to use the proceeds of such insurance for the repair of such loss or the replacement of improvements or buildings. The lessee was given an option to purchase the lessor's interest *286 in the Rollman Department Store and the Havlin Hotel properties for $7,800,000 and the Rollman Garage and Warehouse property for $200,000, subject in each case to certain adjustments. The faithful performance of the obligations assumed by the Rollman Company in the leases was guaranteed by its parent, Hahn Department Stores, Inc., known since May 1935, as Allied Stores Corporation. For each of the taxable years 1929 through 1937 petitioner took as deductions from net income depreciation on the buildings and equipment covered by the leases. These depreciation deductions during the above nine years were allowed by the respondent except for certain minor adjustments as to certain years. In its returns for the fiscal years involved, the petitioner claimed deductions for depreciation on account of the above-described buildings, building improvements and building equipment, as follows: Fiscal year
ended:
Amount
September 30, 1938
$60,624.11
September 30, 1939
54,233.28
September 30, 1940
54,199.23
In his determination of the deficiencies involved, the respondent disallowed the deductions for depreciation so claimed by petitioner. In explanation of respondent's action, the *287 notice of deficiency states, as to the fiscal year 1938, as follows: The claimed deduction of $60,624.11 depreciation on buildings, building improvements, and building equipment leased to The Rollman and Sons Company under a 99-year lease, renewable forever, is held not allowable under the provisions of Section 23 (1) of the Revenue Act of 1936. Except as to the amounts and statutory references, the explanations with respect to the corresponding adjustments for the fiscal years 1939 and 1940 are the same. Opinion VAN FOSSAN, Judge: The single question presented in this case arises from petitioner's claim that it, a lessor of certain property under two leases each for 99 years, renewable forever, is entitled to deduct depreciation on such property. We observed in , that: Deductions for depreciation are allowable on the theory that a taxpayer having capital invested in a depreciable asset, which is being used up or consumed in the process of earning income, is entitled to have a proportionate part of his capital investment, which is being so exhausted, returned to him tax-free each year. The amount *288 allowed represents the loss suffered by the taxpayer on account of the wearing out or exhaustion of the asset. It is obvious, then, that unless (1) the taxpayer has a capital investment in the property, and (2) suffers a present loss on account of the diminution or exhaustion thereof, he is not entitled to a deduction for depreciation. The cited case was affirmed by the , which observed: * * * It has been uniformly held that where property is leased for a long term of years and the lessee covenants to maintain, repair, and renew the property, the lessee is not entitled to an allowance for depreciation because it has invested no capital in the property. See ; , certiorari denied, ; Tunnel R. R. Co. v. Commissioner (C.C.A.) 61 Fed., (2d) 166, certiorari denied, . *289 In respect to the lessor under such a lease, the decisions are also unnanimous to the effect that it is not entitled to an allowance for depreciation because it has sustained no loss, in view of the fact that the lessee has assumed an obligation to maintain, repair, and renew. ; , certiorari denied October 14, 1935, L. Ed. -. See also (appeal dismissed, ) and cases therein cited and discussed. Thus in cases such as the present, the decisions largely turn on the specific contract provisions. It is to be noted that we have before us two leases which the parties to the contracts describe as "perpetual leasehold estates", i.e., 99 years, renewable forever, in which the lessee was given an option to purchase at a fixed price. Particularly pertinent are the two provisions of the lease agreements set out in full in the findings of *290 fact. By these provisions the lessor was freed from all financial burdens arising from ownership. The lessee agreed to pay, in addition to the rent, all taxes, rates, charges, and assessments whatsoever. It agreed to pay the rent absolutely, even though the buildings be destroyed or rendered untenantable. The lessee also agreed that it would "keep the buildings and improvements on said premises in good order and repair" and that it would "at its own expense replace all or any part thereof whenever necessary". By other provisions the lessor was fully protected against loss, against fire damage, or destruction. It is at once apparent that by the contract terms petitioner lessor was fully insured against any possible loss. It can sustain, and has sustained, no present loss. It is to be presumed that the parties to the agreements will perform their covenants according to the agreed terms. It is likewise clear that in the contemplation of the parties the lessee will replace and renew "all or any part" of the buildings many times during the life of the leases. If the property ever is returned to the lessor it will then be in as good, and probably more valuable, condition than when leased. *291 Thus there is no capital depreciation against which to apply an accumulated reserve for depreciation. Under such circumstances to permit any deduction for depreciation to the lessor would not accomplish a replacement of capital. It would simply be an added item of income, free of any legal or economic obligation and likewise free of taxes. As above indicated, these cases turn on their particular facts. By this test the cases cited by petitioner, such as , are readily distinguishable. In that case the court recognized the rule we are here applying in the following words: If it is true that, under their agreement with the petitioner, the tenants are to bear all losses due to exhaustion, wear and tear and obsolescence of the leased properties, the petitioner would not be entitled to an allowance for depreciation. It held that under the contract there involved it was not reasonable to assume that the lessees "intended to bind themselves to replace the present depot at the end of its useful life or to make good to the petitioner losses caused by the exhaustion and obsolescence of that structure." *292 In , the court similarly construed the intentions of the parties. Such is not the case here. The clear import of the agreements before us is that the lessor was forever absolved from any obligation to replace the leased buildings and that the lessee undertook in perpetuity to provide any needed structures. We sustain respondent's holding that no depreciation is deductible by the lessor in this case. The fact that respondent, for the taxable years 1929 through 1937, permitted petitioner to take a deduction for depreciation on the buildings and equipment in question does not stand as a bar to the present decision. Whatever may have been the reason for the allowance in such years it does not prevent a reexamination of the legal questions involved. Decision will be entered for the respondent.